UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LAURA MICHELLE HEYWOOD, :
:
    Plaintiff, :
:
v. : No. 2:15cv195
:
VIRGINIA PENINSULA REGIONAL :
JAIL AUTHORITY, :
and :
ALEXANDER M. KOEHLER, :
:
    Defendants. :

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant, Virginia Peninsula Regional Jail Authority's ("VPRJ") motion to dismiss, (ECF No. 6), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District Court referred the motion to the undersigned United States Magistrate Judge for recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the undersigned recommends that court GRANT VPRJ's motion in part, dismissing Count I, and DENY the remainder.

**I. STATEMENT OF THE CASE**

The plaintiff Laura Heywood ("Heywood") filed this suit to recover damages for an alleged rape that occurred while she was an inmate at Virginia Peninsula Regional Jail. Her amended complaint, (ECF No. 33), alleges fourteen counts against VPRJ

1

and defendant Alexander Koehler ("Koehler") for violations of her Eighth Amendment right to be free from cruel and unusual punishment and for various torts allegedly committed by Koehler.

According to the amended complaint, Heywood was incarcerated at the jail from February 2014 to August 2014. Am. Compl. ¶ 7 (ECF No. 33, at 2). VPRJ "owns and/or operates" the Virginia Peninsula Regional Jail as an instrumentality of the Commonwealth with its membership comprised of the York-Poquoson Sheriff, a representative of James City County, a representative of York County, a representative of the City of Williamsburg, and a representative of the City of Poquoson. Id. ¶ 5. At times relevant to this action, VPRJ employed Koehler as a jail officer. Id. ¶ 6.

On or about June 18, 2014 at the jail, Koehler requested Heywood's "presence as a jail trustee in the medical unit" of the jail. Id. ¶ 8 (ECF No. 33, at 3). During that time, Koehler remarked that Heywood "had a nice ass."[1] Id. Koehler directed Heywood to clean the medical unit, the bathroom, multiple cells, and hallways, and wash laundry and windows. Id. ¶ 10. The next day, Heywood again went to Heywood's cell and specifically requested her presence as jail trustee in the

---

[1] For purposes of VPRJ's motion, the court takes the allegations in the amended complaint as true. See, e.g., Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012). Koehler, for his part, denies many of the specific allegations. See Answer ¶¶ 8-14 (ECF No. 28, at 3).

2

medical unit to perform similar cleaning tasks. Id. ¶¶ 9, 10. At one point during her cleaning duties, Heywood used the restroom, but because the medical unit restrooms do not have stall doors, Koehler "watched [Heywood] use the toilet in a state of partial undress." Id. ¶ 11. Koehler remarked to Heywood, "Your ass looks fine. You don't need to keep looking at it." Id. ¶ 12. Thereafter, Kohler followed Heywood into a laundry room and asked her "for oral sex." Id. ¶ 13. She told him "no," to which Koehler replied, "you know you want it." Id. ¶¶ 13, 14. Heywood again said no. Id. ¶ 14. "Then despite [Heywood]'s rejection of his Koehler's [sic] sexual advance, Koehler removed [Heywood's] pants and wrongfully touched [Heywood] by grabbing her, restraining her against her will, intimately touching her and penetrating her vagina with his penis." Id. ¶ 14.

On or about July 28, 2014, Heywood filed a complaint with VPRJ and participated in an investigation of the alleged rape. Id. ¶ 16. A grand jury later indicted Koehler and alleged that he had committed the crime of carnal knowledge of an inmate by a correction facility officer, in violation of Va. Code Ann. § 18.2-64.2. Id. ¶ 18 (ECF No. 33, at 5).[2] In January 2015,

---

[2] Virginia Code § 18.2-64.2 provides:

> An accused is guilty of carnal knowledge of an inmate . . . if he is an employee . . . a state or local correctional facility or regional jail . . . ; is in a position of authority over the

Koehler entered a guilty plea on the indictment, pursuant to a plea agreement. <u>Id.</u>

Heywood then filed a complaint in this court on May 5, 2015, seeking damages from both Koehler and VPRJ. <u>See</u> (ECF No. 1). VPRJ moved to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6). Heywood opposed the motion and also moved for leave to amend her complaint. (ECF No. 18). The court granted Heywood leave to amend and heard argument on VPRJ's motion July 20, 2015.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. The Amended Complaint

The court granted Heywood leave to amend her complaint July 20, 2015. VPRJ's motion to dismiss was directed at the original complaint. And, "[a]s a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 572 (4th Cir. 2001) (internal marks and citations omitted). Nonetheless,

> Defendants are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476, at 558 (2d ed. 1990). If some of the defects

---

inmate . . . ; knows that the inmate . . . is under the jurisdiction of the state or local correctional facility, a regional jail . . . ; and carnally knows, without the use of force, threat or intimidation . . . an inmate who has been committed to jail or convicted and sentenced to confinement in a state or local correctional facility or regional jail . . . . Such offense is a Class 6 felony.

> raised in the original motion remain in the new pleading, the court will consider the motion as being addressed to the amended pleading. Id.

Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 570 (E.D. Va. 2004). Here, VPRJ contends that defects addressed by its motion to dismiss remain in Heywood's amended complaint. And at oral argument, Heywood's counsel agreed that two issues raised by VPRJ's motion remained in dispute following amendment. Accordingly, the undersigned will address the sufficiency of Heywood's amended complaint (ECF No. 33), as already briefed by the parties.

### B. The Rule 12(b)(6) Standard

A Rule 12(b)(6) motion "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While federal courts adhere to notice pleading, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Notably, the motion to dismiss inquiry is "context-specific." Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009). At bottom, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I, du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). And, in considering a motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E. I. du Pont de Nemours & Co., 637 F.3d at 448 (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). The court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, 684 F.3d at 467 (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

## C. Count I - Heywood's Eighth Amendment Claim

VPRJ's motion to dismiss focused on the original complaint's language citing the Prison Rape Elimination Act, 42 U.S.C. § 15601 et seq., which, as Heywood acknowledges, does not create a cause of action. Heywood's amended complaint omits any reference to the PREA. Accordingly, VPRJ's arguments on that point are moot.

Although not raised in in detail on brief, VPRJ argued at the hearing that Heywood's amended complaint still fails to state an Eighth Amendment claim against VPRJ because it does not allege that VPRJ maintained a policy, custom, or practice that violated the constitution. To state a claim, by way of § 1983, against VPRJ, a municipal entity, Heywood must allege that VPRJ "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or operates by a "governmental 'custom'" that deprived Heywood of her constitutional rights. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). "The doctrine of respondeat superior has no application under [] section [1983]." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal citations omitted). And, the deliberate indifference theory of § 1983 liability only applies to supervisory individuals or officials. See Shaw v. Stroud, 13 F.3d 791, 798-99 (4th Cir. 1994); Clay v. Conlee, 815 F.2d 1164,

7

1170 (8th Cir. 1987) ("[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates."). "In short, a municipality . . . cannot be held liable unless a municipal policy or custom caused the constitutional injury." Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166, (1993).

Heywood's amended complaint does not allege that VPRJ maintained an unconstitutional policy or custom. See Am. Comp. ¶¶ 21-26 (ECF No. 33, at 5-6). And, at the July 20, 2015 hearing, Heywood's counsel conceded that she had no evidence of such a policy or custom. Instead, the amended complaint alleges factual content that relies on respondeat superior - an impermissible theory of § 1983 liability as to VPRJ. See Vinnedge, 550 F.2d at 928. Accordingly, Heywoood's amended complaint fails to state a plausible claim for relief against VPRJ for violation of her Eighth Amendment rights. The undersigned RECOMMENDS that the court GRANT VPRJ's motion in part and DISMISS Count I of Heywood's amended complaint.

### D. Counts IV, VI, VIII, XI, and XIV - Heywood's Tort Claims

#### 1. Sovereign Immunity

Heywood has alleged several Virginia tort claims against VPRJ in its capacity as Koehler's employer: three intentional

torts, one negligence per se count, and one simple negligence count - all based on a theory of respondeat superior. VPRJ argues that it is immune from suit on all five claims. Whether VPRJ can invoke immunity turns on whether VPRJ "occupies the status of a municipal corporation." VEPCO v. Hampton Redevelopment and Housing Auth., 225 S.E.2d 364, 367 (Va. 1976).[3]

VPRJ concedes that it does not share in the Commonwealth's broad sovereign immunity from tort liability, like agencies and counties of the Commonwealth. See id. (holding that "an entity purely local in nature" is not entitled to the same immunity as the Commonwealth itself). See generally The Rector And Visitors of The Univ. of Virginia v. Carter, 591 S.E.2d 76, 78 (Va. 2004) ("Absent an express statutory or constitutional provision waiving sovereign immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees."). Rather, VPRJ argues that Virginia law affords it immunity from tort liability when it is performing governmental functions, just as it does for municipal corporations. See, e.g., City of Chesapeake v. Cunningham, 604 S.E.2d 420, 426 (Va. 2004) ("Sovereign immunity protects

---

[3] Because the court exercises supplemental jurisdiction over Heywood's tort claims, Virginia law governs their disposition. See 28 U.S.C. § 1652; Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

9

municipalities from tort liability arising from the exercise of governmental functions. There is no municipal immunity, however, in the exercise of proprietary functions.") (citations omitted).

Virginia law is clear that operation of a jail is a governmental function - "a part of the public duty to suppress disorder and crime," Franklin v. Town of Richlands, 170 S.E. 718, 719 (Va. 1933); Brown v. Mitchell, 308 F. Supp. 2d 682, 691 (E.D. Va. 2004) (holding same); Va. Code Ann. § 53.1-95.7 ("Each [jail] authority created hereunder shall be deemed to be an instrumentality exercising public and essential governmental functions to provide for the public safety and welfare . . . ."). And, sovereign immunity shields municipalities "from liability for intentional torts committed by an employee during the performance of a governmental function," Niese v. City of Alexandria, 564 S.E.2d 127, 133 (Va. 2002) (holding that the city was immune from liability for police officer's rape). But, VPRJ is only entitled to invoke immunity if VPRJ is indeed a municipal corporation.

Whether or not VPRJ "should be treated as a municipal corporation" requires a two-step analysis. Heckenlaible v. Va. Peninsula Reg'l Jail Auth., No. 4:06cv25, 2006 WL 3196750, at *2 (E.D. Va. Nov. 1, 2006); see HRSD Commission v. Smith, 68 S.E.2d 497, 500 (Va. 1952). First, the court must assess "what attributes of municipality the entity possesses." VEPCO, 225

S.E.2d at 367. Second, "in light of this initial consideration," the court assesses "the particular purpose for determining whether a municipal corporation is present." Id.

As to the first step, there are six "attributes" of a Virginia municipal corporation. See VEPCO, 225 S.E.2d at 367 (citing City of Richmond v. Richmond Metropolitan Auth., 172 S.E.2d 831, 832 (Va. 1970)). Those six attributes are:

> (1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth;
>
> (2) Creation to serve a public purpose;
>
> (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property;
>
> (4) Possession of the power of eminent domain;
>
> (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state;
>
> (6) Management of the corporation vested in a board of directors or a commission.

Heckenlaible, 2006 WL 3196750, at *2-3 (citing City of Richmond, 172 S.E.2d at 832). Though these attributes are "essential to viability as a municipal corporation," it is not a condition precedent that all six be present to conclude that an entity is a municipal corporation. See Smith, 68 S.E.2d at 501 ("While it is true that the more attributes of a municipal corporation an agency has the more likely it is to be treated as a municipal

11

corporation, the final decision rests on the specific issue of each case."); York Cty. v. Peninsula Airport Comm'n, 369 S.E.2d 665, 666 (Va. 1988) ("We have identified six attributes pertinent to that inquiry." (emphasis added)); Dowdy v. Pamunkey Reg'l Jail Auth., No. 3:14cv003, 2014 WL 2002227, at *2 (E.D. Va. May 15, 2014) (citing Smith, 68 S.E.2d at 501) ("To have the protection of sovereign immunity, a locally created entity need not have all the characteristics of a municipal corporation."). But cf. Hauth v. Southeastern Tidewater Opportunity Project, Inc., 420 F. Supp. 171, 174 (E.D. Va. 1976) (implying that all six attributes are necessary to a finding that a municipal corporation is present).

As to the second step of the analysis, the Supreme Court of Virginia has instructed courts to look at the purpose for which the entity is seeking to be treated as a municipal corporation. See, e.g., VEPCO, 225 S.E.2d at 367. That is, a local entity "may be held to be a municipal corporation for some purposes, but not for others." Smith, 68 S.E.2d at 501. Specifically, an entity is more likely "to be a municipal corporation when the pivotal point is one of procedure," id. - "i.e., whether the agency has to file municipal reports," Hauth, 420 F. Supp. at 173 - than "when a question of substantive law is involved." Smith, 68 S.E.2d at 501.

Federal courts in Virginia have addressed the status of regional jail authorities for purposes of sovereign immunity three times. See Heckenlaible, 2006 WL 3196750, at *3; Dowdy, 2014 WL 2002227, at *3; Boren v. Northwestern Reg'l Jail Auth., No. 5:13cv13, 2013 WL 5429421, at *4 (W.D. Va. Sept. 30, 2013). Twice the court has held that a regional jail authority failed to demonstrate that it should be treated as a municipal corporation. Heckenlaible, 2006 WL 3196750, at *3; Boren, 2013 WL 5429421, at *4. Here too, the undersigned is not persuaded that VPRJ should be treated as a municipal corporation for purposes of governmental immunity.

As to the first step - the six attributes - VPRJ's powers and characteristics disfavor finding that it should be treated as a municipal corporation. Virginia Code § 53.1-95.2 authorizes "[t]he governing bodies of two or more counties, cities, or towns or a combination thereof" to create a jail authority. Va. Code Ann. § 53.1-95.2. Section 53.1-95.7 delineates the powers of each jail authority. A cross-check of § 53.1-95.7 and the six attributes of a municipality from Smith, reveals that VPRJ possesses four of the six. Accord Heckenlaible, 2006 WL 3196750, at *3. However, the two attributes VPRJ lacks are those most intrinsic to municipal corporations, namely the General Assembly's designation as a body politic or political subdivision of the Commonwealth and

13

the power of eminent domain. See, e.g., Short Pump Town Ctr. Comm. Dev. Auth. v. Hahn, 554 S.E.2d 441, 446 (Va. 2001) ("[T]he General Assembly clearly knows how to denominate an authority as a 'political subdivision' when it wishes to do so."); Light v. City of Danville, 190 S.E. 276, 281 (Va. 1937) ("The power of eminent domain is a most important incident of the power of a sovereign."). By contrast, most of the attributes which VPRJ does enjoy are found in private corporations as well. Fully private jails have the power to sue and be sued, to enter into contracts, to hold and dispose of real and personal property, to borrow money and issue bonds, and to manage their affairs by a board of directors. Compare Peninsula Airport Comm'n, 369 S.E.2d at 666-67 (listing the six attributes) and Va. Code Ann. § 53.1-95.7 (listing regional jail authorities' powers), with Virginia Stock Corporation Act, Va. Code Ann. § 13.1-627(A) (listing the general powers of a Virginia corporation).

Other attributes of municipal character are exclusively vested in, and conferred by Virginia's legislature. See, e.g., State Highway Comm'r of Virginia v. Hooker Furniture Corp., 198 S.E.2d 649, 650 (Va. 1973) (citing Dillon v. Davis, 112 S.E.2d 137, 141 (Va. 1960) ("It is well established that statutes conferring the power of eminent domain are to be strictly construed against the grant, and the authority conferred by such statutes must be exercised in the manner provided by law."); Va.

14

Code Ann. § 15.2-1901.1 (granting localities power of condemnation for certain purposes). While the General Assembly enabled the creation of regional jail authorities to serve a public purpose, VPRJ has no power of eminent domain, and more importantly is not a political subdivision of the Commonwealth. Va. Code Ann. § 53.1-95.7.

Whether an entity is a political subdivision of the Commonwealth is determined solely by "the language of the relevant enabling legislation." Hahn, 554 S.E.2d at 447. The enabling legislation for jail authorities clearly does not designate them as political subdivisions. See Va. Code Ann. § 53.1-95.7. Unlike numerous quasi-governmental authorities and commissions designated as political subdivisions or bodies politic, regional jail authorities are "instrumentalities" of the Commonwealth.[4] Id. "Thus, in the absence of any statutory designation . . . as [a] 'political subdivision[]'" VPRJ "is not such an entity." Hahn, 554 S.E.2d at 447. Although, the lack of a designation as a political subdivision is "not determinative," it is a factor that weighs heavily against VPRJ's bid for sovereign immunity. Id. at 446. And, judges of

---

[4] For an exhaustive list of authorities, which the General Assembly has expressly designated as political subdivisions, see Hahn, 554 S.E.2d at 445 n.10 (cataloging thirty-three (33) authorities from the Virginia Code). Only three code sections create authorities not expressly designated as political subdivisions - those creating regional jail authorities, community development authorities, and the Northern Virginia Transportation Authority. Id. at 446 n.11.

this court have interpreted Smith and its progeny to essentially require all six attributes, even if not explicitly stated. See Heckenlaible, 2006 WL 3196750, at *4); Hauth, 430 F. Supp. at 174. Accordingly, VPRJ's missing municipal attributes dictate that it should not be treated as a municipal corporation.

The second step of the inquiry also leads to that conclusion. Again, an entity is more likely to be treated as a municipal corporation when "the pivotal point is one of procedure," than when a question of substantive law is involved. Smith, 68 S.E.2d at 501. Here, the "pivotal point" is sovereign immunity. Undoubtedly, the application of the "doctrine of sovereign immunity [which] protects municipalities from tort liability," Niese, 564 S.E.2d at 132 (emphasis added), involves "a question of substantive law." Smith, 68 S.E.2d at 501. The availability of sovereign immunity will "significantly affect the result of a litigation." Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945) (Erie doctrine); see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 406 (2010) (distinguishing Erie from the validity of federal rules under the Rules Enabling Act). Whether VPRJ can incur tort liability constitutes a rule of decision far more "substantive" than "whether the agency has to file municipal reports." Hauth, 420 F. Supp. at 173 (giving an example of a procedural issue). With an issue of substantive law involved,

16

the circumstances militate away from treating VPRJ as a municipal corporation.

VPRJ's lack of attributes unique to municipal corporations, coupled with the substantive issue presented, renders it inappropriate for the court to treat VPRJ as a municipal corporation for purposes of sovereign immunity.[5] See Heckenlaible, 2006 WL 3196750, at *4; accord Boren, 2013 WL 5429421, at *4. Contra Dowdy, 2014 WL 2002227, at *3. Therefore, the undersigned RECOMMENDS that the court DENY VPRJ's motion to dismiss Heywood's tort counts.

### 2. Negligence Per Se

VPRJ's final argument raised in its motion to dismiss is that Heywood failed to state a claim for negligence per se, based on Koehler's guilty plea to a violation of Va. Code Ann. § 18.2-64.2. VPRJ argued that the claim failed because § 18.2-

---

[5] Interestingly, the House of Delegates recently considered a bill that simply and explicitly provided: "Any authority created pursuant to § 53.1-95.2 shall enjoy the protection of the Commonwealth's sovereign immunity in the performance of its government functions as allowed by this Chapter." HB 1513. However, that bill was left in the House's Courts of Justice Committee at the end of 2015 regular session. "Judicial investigation of legislative history has a tendency to become . . . an exercise in "'looking over a crowd and picking out your friends,'" Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005) (quoting Judge Harold Leventhal, in Patricia M. Wald, Some Observations on the Use of Legislative History in the 1981 Supreme Court Term, 68 Iowa L. Rev. 195, 214 (1983)). But, HB 1513 suggests that, at least in some legislators' opinions, regional jail authorities are not treated as municipal corporations under current Virginia law, and thus not entitled to immunity. An equal number may have reached the opposite conclusion and are content to await appellate correction. In either case, the clarity of the proposed statutory amendment suggests room in existing law for debate.

17

64.2 does not create a private cause of action. However, at the July 20, 2015 hearing, counsel for VPRJ conceded, as Heywood argued, that argument "is simply incorrect." Pl.'s Br. (ECF No. 15, at 14).

Under Virginia law, "[t]he doctrine of negligence per se represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person].'" Schlimmer v. Poverty Hunt Club, 597 S.E.2d 43, 46 (Va. 2004) (quoting Butler v. Frieden, 158 S.E.2d 121, 122 (Va. 1967)). It is a theory upon which a plaintiff can prove negligence, not a separate cause of action.

> A party relying on negligence per se does not need to establish common law negligence provided the proponent of the doctrine produces evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of the injury.

Id. (citing Halterman v. Radisson Hotel Corp., 523 S.E.2d 823, 825 (Va. 2000); Virginia Elec. & Power Co. v. Savoy Constr. Co., 294 S.E.2d 811, 817 (Va. 1982)). Because the parties agree that the criminal code section upon which Heywood relies for the standard of care applicable to Koehler does not need to create a cause of action, Heywood's amended complaint alleges a plausible claim for negligence per se. Accordingly, the undersigned

18

recommends that the court DENY VPRJ's motion as to Count VIII of the amended complaint.

### III. RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS:

(1) the court GRANT IN PART VPRJ's motion and DISMISS Count I of Heywood's amended complaint;

(2) the court DENY VPRJ's motion as to all other counts and DIRECT VPRJ to file an answer within fourteen (14) days of the final disposition of the motion to dismiss.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

19

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 21, 2015